**LAW OFFICE OF JONATHAN GROSS**
2833 Smith Avenue, Suite 331 · Baltimore, Maryland 21209 · (443) 813-0141 · jon@jonathangross.law

November 17, 2026

**VIA CM/ECF**

Hon. Valerie Caproni
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Guidepoint Global, LLC v. Ware, et al.*, No. 1:26-cv-03684-VEC-HJR — Defendants' Position for the November 16, 2026 Joint Status Letter (Dkt. 224)

Dear Judge Caproni:

I represent Defendants Alan Ware, Kirang Gohil, Christiana (a/k/a Tiana) Eng, Alex Telo, Olyvia Giordano, John Elliott, Martin Shkreli, DL Software, Inc., and RealTime Advisory, Inc. (the "Represented Defendants"). Pursuant to the Civil Case Management Plan and Scheduling Order (Dkt. 95), I submit the Represented Defendants' position on the status of discovery, in response to Plaintiff's portion of the joint letter filed last night (Dkt. 224).

**1. Overview**

Guidepoint is trying to win this case through attrition rather than on the merits. Since I appeared on October 22, Plaintiff has served three deposition notices within hours of my appearance, nine sets of requests for admission the next day, and a stream of unilateral deadlines, and has now brought to the Court issues it never raised with me before the relevant deadline passed (Dkt. 221 at 2). That approach is bad for the Court, bad for the Defendants, and bad for Guidepoint itself, whose fees grow with every manufactured dispute. It is designed to intimidate, not to prosecute the case fairly, and the Court should not reward it. No discovery dispute is ripe for the Court today. Each item in Plaintiff's letter was either resolved before the letter was filed, is actively being coordinated with Plaintiff's knowledge, or was never raised with undersigned counsel through a meet-and-confer.

**2. Status of Discovery**

**Every delay has been explained.** Plaintiff says Defendants have met its requests with "unexplained delays." The record shows otherwise. Before the change of counsel, Defendants:

- submitted their Devices to the Forensic Examiner under the court-ordered protocol (Dkt. 79), releasing approximately 120,000 documents to Guidepoint in the first review

tranche, with a further batch of approximately 246,000 documents scheduled for release on August 18 (Dkt. 103 at 5);

- responded to Guidepoint's expedited discovery under the Court's May order (Dkt. 23; Dkt. 103 at 2), served responses to Guidepoint's July 2 requests (Dkt. 103 at 1), and made document productions on July 7–8 and September 8, 2026;
- sat for three depositions: Sheetal Duggal (June 24), Kirang Gohil (September 8), and Alan Ware (September 10); and
- agreed not to move to quash Guidepoint's subpoena for Mr. Ware's bank records (Dkt. 103 at 2), which the bank has since produced.

The only interruption came from the change of counsel, which the Court knows about. Prior counsel moved to withdraw on October 7 and 14 (Dkts. 189, 198). I appeared on October 22 (Dkts. 204, 205), and the Court relieved prior counsel on October 23 and 26 (Dkts. 208, 215). Within hours of the October 26 conference, I contacted the forensic vendor and informed all parties (Dkt. 221 at 2). Since then I have timely answered the Third Amended Complaint (Dkt. 219), arranged with Guidepoint's counsel to reserve dates for depositions, served DL Software's responses to Guidepoint's Second Requests for Production, and sent Guidepoint a detailed deficiency letter on its own production.

**Discovery is not "effectively stayed"; Guidepoint's production is what was delayed.** On September 14, Guidepoint agreed to produce documents "on a rolling basis" in response to roughly sixty of Defendants' requests. Nothing came. As of my November 10 letter, nearly sixty days later, Guidepoint had not produced a single page. Only after that letter did Guidepoint produce the "approximately 5,942 pages" its letter describes, on Friday, November 13 and Monday, November 16, the business day it filed Dkt. 224. Holding back production for two months and then delivering thousands of pages at once, on the eve of a status report, is not production on a rolling basis.

**Guidepoint objected to all 135 of Defendants' requests.** Guidepoint incorporated nine general objections into its response to every one of Defendants' 135 requests, and refused or unilaterally narrowed its response to 82 of them. That is why my November 10 letter runs 88 pages: it answers Guidepoint's objections request by request, as Rule 34 and Local Civil Rule 37.2 contemplate, and proposes a meet-and-confer (Ex. 1 at 87–88). Guidepoint has not yet responded to it.

**3. Response to Plaintiff's Anticipated Disputes**

**a. Discord.** The Discord issue is a scheduling problem, not a refusal, and Plaintiff knows it. Guidepoint first raised Discord on September 14, five weeks before I appeared. The Forensic Examiner, iDS, has already collected Ms. Eng's Discord data and has received credentials for Mr. Telo and Ms. Giordano. I hold Mr. Shkreli's credentials, to be provided during a live session so that he can supply the one-time code. What remains is logistical: iDS needs the email address linked to Ms. Giordano's account and a resent login for non-party Nicholas Longo, and Discord

sent a "new login location" verification to Mr. Telo's email that he must confirm while iDS is connected. Each of those steps requires the account holder, iDS, and counsel to be available at the same time. iDS proposed a session for the afternoon of Friday, November 13, when I had a court appearance in another matter; the parties were exchanging availability again on the evening of November 16, and a call with iDS is set for this morning. Plaintiff's letter omits all of this. iDS has also advised that Discord's current export process can take up to 30 days to deliver data, a limit set by Discord, not by any Defendant. I expect the remaining access steps to be completed this week, and see no reason for the Court to take up the issue.

Plaintiff's letter is also the first time Guidepoint has pointed me to an August 31 text message (DL00776), or suggested that Mr. Gohil used Discord or that other Devices were not provided. Guidepoint's November 2 letter and November 12 email sought Discord data from three non-party DL Software employees, not from Mr. Gohil. If Plaintiff believes other accounts or Devices are at issue, it should identify them, and I will address them promptly.

Plaintiff says it would prefer to finish reviewing Discord material before depositions. Defendants would have preferred to receive Guidepoint's documents before the depositions Guidepoint noticed. Guidepoint did not produce any until last week.

**b. The "ongoing deficiencies."** Plaintiff's September 14 deficiency letter went to prior counsel, who was withdrawing weeks later. Plaintiff first raised Mailchimp communications, financial data, and advisor transcripts with me on November 4, and at the November 6 meet-and-confer, which I had understood would address Discord. These categories overlap with Guidepoint's Second Requests for Production to DL Software. I asked for until November 16 to respond, and on November 16, before Plaintiff filed its letter, DL Software served its written responses and objections, which agree to search for and produce Mailchimp and similar bulk-email campaigns, advisor transcripts, and financial documents, subject to stated objections. Plaintiff's letter does not mention those responses. Repeating the same issue under several headings does not make it a pattern.

**c. DL Software's responses.** Guidepoint served its Second Requests for Production to DL Software on prior counsel on October 2, while prior counsel was moving to withdraw. Guidepoint and I corresponded about other discovery throughout the period those responses were running, yet it never mentioned them. It raised them for the first time on November 4, two days after it says they were due, and in the same letter declared every objection waived. I responded that DL Software would serve responses by November 16, and it did. Had Guidepoint mentioned the requests before the deadline, I would have served on time or sought a short extension. DL Software has not waived its objections, and good cause exists for any delay.

Since I appeared, that is the only deadline Plaintiff says was missed. The other instance it cites (Dkt. 103) concerned responses that prior counsel served on August 13, ten days late, for reasons prior counsel explained to the Court at the time (Dkt. 103 at 1–2).

**d. The suggestion that my letter was "generated by artificial intelligence."** My office uses artificial-intelligence tools, openly, as many firms now do. We used them to organize Guidepoint's objections to all 135 requests and to keep our responses consistent, which reduces error. Every position in the letter is mine, and I reviewed it before it was sent. That is not a discovery dispute. Work that once took dozens of billable hours can now be done accurately in far less time, which serves the parties and the Court.

**4. Injunction Compliance and the Contempt Motion**

Guidepoint emailed a list of factual questions about the Represented Defendants' current work and demanded immediate answers. I confirmed that my clients are complying with the orders that bind them. If Guidepoint wants discovery on those subjects, it should serve formal requests under the Federal Rules. Defendants will answer any properly served interrogatory or request on those subjects, under oath and within the time the Rules allow. Informal demands outside the Rules, timed to appear in a status letter, are not a discovery dispute.

Guidepoint's contempt motion (Dkt. 107) has been referred to Judge Ricardo (Dkt. 114). Defendants will address it there.

**5. Mediation and the Discovery Schedule**

**Mediation.** The private mediation set for October 21 did not go forward while prior counsel's motions to withdraw were pending (Dkt. 201). At the October 26 conference, Judge Ricardo raised settlement with the parties. Since then, I have tried to reschedule with the parties' mediator, Russell Beck, Esq., whose earliest available dates are December 21 and 22. Defendants believe this case can be mediated sooner using the Court's resources, through the Court-annexed mediation program or a settlement conference before Judge Ricardo. Guidepoint refuses to mediate unless Defendants agree to unreasonable preconditions. Defendants therefore intend to move for an order referring the parties to mediation.

**The fact-discovery deadline.** Fact discovery closes on January 29, 2027 (Dkt. 95), 74 days from now. That schedule is not workable, and it is particularly unfair to the five Defendants first added in the Third Amended Complaint on September 2 (Dkts. 135, 138). Guidepoint produced its first documents only last week, says production will continue "on a rolling basis," and has given no date for its next or final production, or its likely volume. Defendants must still review Guidepoint's production, take Guidepoint's depositions, and serve interrogatories, requests for admission, and further document requests, none of which prior counsel served. Defendants will ask Guidepoint whether it consents, and intend to move for a 90-day extension of fact discovery and the deadlines that follow it. Both sides would benefit from the additional time, and it would allow mediation and any settlement discussions to proceed without the pressure of an artificial deadline.

**6. Conclusion**

Guidepoint is using a change of counsel, caused by a conflict, to portray ordinary transition issues as misconduct. The Represented Defendants ask the Court to decline to take up the matters in Plaintiff's letter, to give the parties room to complete the open meet-and-confers and the Discord coordination, and to consider the requests for mediation and for an extension of the discovery schedule when Defendants file them.

Thank you for the Court's attention to this matter.

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Law Office of Jonathan Gross
2833 Smith Avenue, Suite 331
Baltimore, Maryland 21209
(443) 813-0141
jon@jonathangross.law
*Counsel for the Represented Defendants*

cc: All counsel of record (via ECF); Sheetal Duggal, pro se (via email)