**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Guidepoint Global, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Alan Ware, Sheetal Duggal, Kirang Gohil, Christiana (aka Tiana) Eng, John Elliott, Alex Telo, Olyvia Giordano, Martin Shkreli, Inquire Network, Inc., DL Software, Inc., and RealTime Advisory, Inc.,<br><br>Defendants. | CIVIL ACTION NO. 1:26-cv-03684-VEC-HJR |

**PLAINTIFF GUIDEPOINT GLOBAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS DL SOFTWARE, INC., ENG, GOHIL, AND WARE'S COUNTERCLAIMS**

OF COUNSEL:

GREENBERG TRAURIG, LLP
Justin K. Victor (*admitted phv*)
Jacob R. Dean (*admitted phv*)
Rushton D. Pope (*admitted phv*)
Fallon Jones (*admitted phv*)
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100
victorj@gtlaw.com
deanj@gtlaw.com
Rushton.Pope@gtlaw.com
Fallon.Jones@gtlaw.com

GREENBERG TRAURIG, LLP
Jason D. Burns
Daniel Filor
Shira M. Poliak
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9294
Jason.Burns@gtlaw.com
Filord@gtlaw.com
Shira.Poliak@gtlaw.com

Dated: November 20, 2026

*Counsel for Plaintiff Guidepoint Global, LLC*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

I. BACKGROUND AND PROCEDURAL HISTORY .......... 2

II. LEGAL STANDARD .......... 4

III. ARGUMENT .......... 6

A. The Counterclaims Are Duplicative of Defendants' Affirmative Defenses .......... 6

B. The DJA Counterclaims Would Not Present A Live Controversy Once The Court Resolves Guidepoint's Claims .......... 9

C. The DJA Counterclaims Do Not Broaden The Dispute's Scope .......... 10

D. Courts Routinely Dismiss DJA Counterclaims In Similar Circumstances .......... 12

E. The Counterclaims Should Also Be Stricken Under Rule 12(f) as Mirror Images of Guidepoint's Contract Claims .......... 14

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) ....................5, 10

*Aquavit Pharms., Inc. v. U-Bio Med, Inc.*,
2020 WL 4504737 (S.D.N.Y. Aug. 5, 2020) ....................8, 9, 13, 14

*Art Media, LLC v. Brant*,
2021 WL 746261 (S.D.N.Y. 2021) ....................14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Bodum Holding AG v. Starbucks Corp.*,
2020 WL 6135714 (S.D.N.Y. Oct. 16, 2020) ....................6, 14

*Dixie Gas & Food, Inc. v. Shell Oil Co.*,
2005 WL 1273273 (N.D. Ill. May 25, 2005) ....................10

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) ....................5

*Grey Wall Software, LLC v. AeroSimple LLC*,
2022 WL 17404462 (D. Conn. Dec. 2, 2022) ....................12, 13

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*,
624 F. Supp. 3d 281 (E.D.N.Y. 2022) ....................10

*Nat'l Academy of Television Arts and Sciences, Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021) (Caproni, J.) ....................5, 8, 13

*Ohr Somayach/Joseph Tanenbaum Edu. Ctr. v. Farleigh Int'l Ltd.*,
483 F. Supp. 3d 195 (S.D.N.Y. 2020) ....................4

*Steris Corp., et al., v. Haller, et al.*,
2026 WL 1842931 (N.D. Ohio June 26, 2026) ....................10, 12, 13

*Su v. Sotheby's, Inc.*,
2022 WL 14118016 (S.D.N.Y. Oct. 24, 2022 ....................9

*United Coal Co., LLC v. Xcoal Energy & Res.*,
2024 WL 4533349 (S.D.N.Y. Oct. 21, 2024) ....................11

*Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*,
2013 WL 247839 (S.D.N.Y. Jan. 22, 2013) ....................6

**Statutes**

28 U.S.C. § 2201(a) ....................4

## INTRODUCTION

Defendants-Counterclaimants Alan Ware, Kirang Gohil, Christiana Eng, and DL Software, Inc.'s (together, the "Counterclaimants") five counterclaims are a waste of the Court's time. The counterclaims serve no useful purpose. They ask the Court to adjudicate the validity, scope, and enforceability of the same provisions of the Employment Agreements and Equity Incentive Agreements already placed at issue by Guidepoint's affirmative contract claims and Counterclaimants' affirmative defenses. The Court has already found Guidepoint likely to succeed on its claims that Eng, Telo, and Giordano breached their Employment Agreements and has enjoined each of these Defendants from further breaching them. *See* Dkt. 190 at 1, 13–14; Dkt. 209 at 1–2. Ware and Gohil are likewise enjoined from further breaching the Employment Agreements. *See* Dkts. 37, 42.[1] The counterclaims identify no independent controversy requiring declaratory relief. They simply seek an additional vehicle for litigating defenses to Guidepoint's existing claims.

The Declaratory Judgment Act was not designed to give defendants a second bite at the apple or duplicate existing causes of action. It was designed to resolve genuine controversies. Courts in the Second Circuit have consistently dismissed these types of declaratory judgment counterclaims, recognizing that they serve no useful purpose when they duplicate a defendant's affirmative defenses, would not present a live controversy following resolution of the plaintiff's claims, and do not broaden the scope of the dispute in any meaningful way. That is precisely the case here, and the Declaratory Judgment Act does not require such duplication. Because the counterclaims mirror affirmative defenses, will be resolved through adjudication of Guidepoint's

[1] Yet Telo and Giordano have asserted no counterclaim challenging the enforceability of the very agreements under which they are enjoined. *See* Dkt. 209 at 1–2.

affirmative claims, and do not materially broaden the dispute, the Court should exercise its discretion to dismiss them. Alternatively, because the counterclaims are the mirror image of Guidepoint's contract claims and would leave no independent case or controversy once those claims are decided, the Court should strike them under Rule 12(f) as redundant.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from a straightforward but serious betrayal. Certain former Guidepoint employees and consultants, *i.e.*, the Individual Defendants[2] and Counterclaimants, took Guidepoint's trade secrets and proprietary information to establish and operate competing ventures despite contractual obligations designed to prevent precisely that conduct. Their Employment and Equity Incentive Agreements imposed narrowly tailored confidentiality, non-competition, non-solicitation, and non-interference obligations that protected Guidepoint's proprietary information and legitimate business interests. Guidepoint brought this action to remedy the violations of those obligations and enforce its contractual rights. The counterclaims do not introduce a separate dispute. Instead, they seek declaratory relief concerning the validity, scope, and enforceability of the very contractual provisions that Guidepoint's claims already put directly at issue.

Guidepoint's Third Amended Complaint asserts twelve causes of action, seven of which are breach of contract claims. Dkt. 138.

**The Court has already found that Guidepoint is likely to succeed on the merits of its breach of contract claims concerning the Employment Agreements.** Guidepoint sought a temporary restraining order based in part on breaches of those Agreements. Dkt. 190 at 1. Following briefing and oral argument, the Court granted the application, finding that Guidepoint was "likely to succeed on the merits" of those claims. *Id.* at 1, 13, 14. In doing so, the Court rejected

---

[2] "Individual Defendants" refers to Defendants Alan Ware, Sheetal Duggal, Kirang Gohil, Christiana Eng, John Elliott, Alex Telo, Olyvia Giordano, and Martin Shkreli, collectively.

the arguments that the non-solicitation and non-interference provisions are unenforceably broad (*id.* at 11–13), and that the competitive activity fell outside the non-competition provisions. *Id.* at 13–14. The Court also observed that "it is also in the public interest to hold defendants to their contractual agreements." *Id.* at 17. On October 23, 2026, the Court expressly incorporated that reasoning and converted the modified TRO into a preliminary injunction that continues to prohibit Defendants from further breaching the Employment Agreements. Dkt. 209 at 1–2.[3]

Despite these findings, Counterclaimants responded to the Third Amended Complaint by asserting affirmative defenses and five counterclaims seeking declaratory relief and challenging the enforceability of the same contractual provisions underlying both Guidepoint's breach of contract claims and the Preliminary Injunction. *See* Dkt. 219, Third–Eighth Affirmative Defenses; ¶¶ 337–417. These counterclaims parallel and parrot the affirmative defenses, demonstrating why they should be dismissed as duplicative.

Indeed, each counterclaim expressly mirrors a claim Guidepoint has already asserted and asks the Court to adopt Counterclaimants' opposing interpretation of the same contract. Count I, for example, alleges that Guidepoint claims Ware breached obligations under his Employment Agreement; Ware disputes those allegations and contends his Agreement does not impose the obligations Guidepoint alleges, and that Guidepoint's interpretation of the Agreement is incorrect. *Id.* ¶¶ 387–389. Of course, Count I ignores that the Court has already found a likelihood of success on the enforceability of the Employment Agreements. *See* Dkt. 190 at 11–14. Counts II through V

[3] Counterclaimants Ware and Gohil are subject to separate injunctions, entered on consent, that bar them from violating their Employment Agreements. *See* Dkts. 37, 42. Those orders rest on stipulation rather than the Court's likelihood-of-success findings, but they confirm that Ware and Gohil have already agreed to be bound by the provisions they now challenge.

repeat that same structure for the other Employment Agreements and Equity Incentive Agreements. See *id.* ¶¶ 394–417.

Notably, the counterclaims were brought only by Ware, Gohil, Eng, and DL Software. Telo and Giordano, who are enjoined under the preliminary injunction based on the same Employment Agreements (*see* Dkt. 209), have asserted no counterclaim seeking a declaration that their Agreements are unenforceable, inapplicable, or otherwise limited.

## II. LEGAL STANDARD

"[A] motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Ohr Somayach/Joseph Tanenbaum Edu. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 202 (S.D.N.Y. 2020). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A counterclaim plaintiff's "obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A counterclaim must have facial plausibility, and a counterclaim is facially plausible only "when the [counterclaim plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal of a counterclaim is appropriate "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.

Defendants bring their counterclaims pursuant to the Declaratory Judgment Act. The DJA provides that courts "*may* declare the rights and other legal relations of an[] interested party seeking such declaration" in "a case of actual controversy"—but it does not obligate them to do so. 28 U.S.C. § 2201(a) (emphasis added). The Second Circuit has "consistently interpreted this

permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). "[E]ven in circumstances when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts retain broad discretion to decline jurisdiction under the DJA[.]" *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (citation modified).

When deciding to entertain a declaratory judgment action, courts consider a variety of factors, including: (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction. *Id.* at 99–100 (internal citations omitted).

"A counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiffs' claims have been resolved on the merits." *Nat'l Academy of Television Arts and Sciences, Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d

408, 430 (S.D.N.Y. 2021) (Caproni, J.) (citing *Arista Recs. LLC v. Usenet.com., Inc.*, No. 07-8822, 2008 WL 4974823, at *4–5 (S.D.N.Y. Nov. 24, 2008)).[4]

Federal Rule of Civil Procedure 12(f) "is the proper [] vehicle for a motion to dismiss a claim prohibited by the mirror image doctrine." *Bodum Holding AG v. Starbucks Corp.*, No. 19-CV-4280, 2020 WL 6135714, at *10 (S.D.N.Y. Oct. 16, 2020). A court may strike from a pleading "any redundant . . . matter." FED. R. CIV. P. 12(f). "When a counterclaim is merely the 'mirror image' of an opposing party's claim and the counterclaim serves no independent purpose, the counterclaim may be dismissed." *Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, No. 11 Civ. 3633 (LTS), 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013) (citing *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822 (HB), 2008 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008)).

## III. ARGUMENT

The Court should dismiss all of Defendants' counterclaims because they (1) are duplicative of Defendants' affirmative defenses; (2) would not present a live controversy once Guidepoint's claims are resolved on the merits; (3) do not broaden the dispute's scope; and, alternatively, (4) are mirror images of Guidepoint's contract claims that should be stricken under Rule 12(f). Dismissal of the counterclaims promotes judicial efficiency and avoids needless duplication.

### A. The Counterclaims Are Duplicative of Defendants' Affirmative Defenses

To begin, the Court should dismiss the counterclaims because they duplicate affirmative defenses already asserted in this action. *Compare* Answer, Third–Eighth Affirmative Defenses *with* Counterclaims Counts I–V. As summarized below, the five counterclaims simply repackage

[4] *See* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1406 (3d ed. 2025) ("When the request for declaratory relief [in a counterclaim] brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, however, a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it.").

the same challenges to the Employment Agreements and Equity Incentive Agreements already presented as affirmative defenses.

<table>
<tr><th>Affirmative Defenses</th><th>Text of Affirmative Defense</th><th>Mirror Image Counterclaim</th></tr>
<tr><td>Third Affirmative Defense: Unenforceability of the Confidentiality Provisions</td><td>Plaintiff's claims that Ware, Gohil, Eng, Telo and Giordano breached their contractual confidentiality obligations fail as a matter of law because Section 5 of their respective Employment Agreements is unenforceable as facially vague and overbroad.</td><td rowspan="4">"Guidepoint has asserted that [Ware, Gohil, and Eng] breached certain duties or obligations arising under the … Employment Agreement and has sought relief based on those assertions. [Ware, Gohil, and Eng] dispute[] those allegations and contend that [their] employment agreement[s] do[] not impose the duties and/or obligations alleged by Guidepoint. [Ware, Gohil, and Eng] further contend[] that Guidepoint's interpretation of the [] Employment Agreement is incorrect." Answer, Counterclaims Count I–III, ¶¶ 387–389, 394–396, 401–403.</td></tr>
<tr><td>Fourth Affirmative Defense: Unenforceability of the Non-Competition Provisions</td><td>Plaintiff's claims that Ware, Gohil, Eng, Telo and Giordano breached their contractual non-competition obligations fail as a matter of law because Section 4(a) of their respective Employment Agreements is unenforceable as it imposes undue hardship. . . .</td></tr>
<tr><td>Fifth Affirmative Defense: Unenforceability of the Non-Interference Provisions</td><td>Plaintiff's claims that Ware, Gohil, Eng, Telo and Giordano breached their contractual non-interference obligations fail as a matter of law because Section 4(c) of their respective Employment Agreements is unenforceable as facially vague and overbroad.</td></tr>
<tr><td>Sixth Affirmative Defense: Unenforceability of Non-Solicitation Provisions</td><td>Plaintiff's claims that Ware, Gohil, Eng, Telo and Giordano breached their contractual non-solicitation obligations fail as a matter of law because Section 4(b) of their respective Employment Agreements is unenforceable as facially vague and overbroad.</td></tr>
<tr><td>Seventh Affirmative Defense: Unenforceability of the Equity Incentive Confidentiality Provisions</td><td>Plaintiff's claims that Ware and Gohil breached their confidentiality obligations under their respective Equity Incentive Agreements fail as a matter of law because Section 6(b) of those agreements is unenforceable as facially vague and overbroad.</td><td rowspan="2">"Guidepoint has asserted that [Ware and Gohil] breached certain duties or obligations arising under the [] Equity Incentive Agreement, and has sought relief based on those assertions. [Ware and Gohil] dispute[] those allegations and contends that the [] Equity Incentive Agreement does</td></tr>
<tr><td>Eighth Affirmative Defense: Unenforceability of</td><td>Plaintiff's claims that Ware and Gohil breached their contractual non-competition obligations fail as a matter of law because</td></tr>
</table>

| Affirmative Defenses | Text of Affirmative Defense | Mirror Image Counterclaim |
|---|---|---|
| the Equity Incentive Non-Competition Provisions | Section 6(a) of their respective Equity Incentive Agreements is unenforceable as it imposes undue hardship on Ware and Gohil… [and is] greater than is necessary to protect Plaintiff's interests[.] | not impose the duties/ and or obligations alleged by Guidepoint. [Ware and Gohil] further contend[] that Guidepoint's interpretation of the [] Equity Incentive Agreement is incorrect." Answer, Counterclaims Count IV–V, ¶¶ 408-410, 415-417. |

"A counterclaim seeking a declaratory judgment does not serve a useful purpose and may be dismissed if it simply parallels the counterclaimant's affirmative defenses." *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-3351, 2020 WL 4504737, at *2 (S.D.N.Y. Aug. 5, 2020) (Caproni, J.). When a declaratory judgment "rests on [] legal arguments that are identical to their affirmative defenses[,] . . . [a] declaratory action is entirely duplicative of [the plaintiff's] breach of contract claim—and any resolution of the merits of Plaintiff's claim will necessarily resolve Defendants' counterclaim." *See id*. at *3. In such situations, the counterclaims are "redundant and nothing more than a distraction." *Id*.; *see also Nat'l Academy of Television Arts and Sciences, Inc.*, 551 F. Supp. 3d at 430 (dismissing declaratory judgment counterclaim because it is duplicative of defendant's affirmative defense and mirrors plaintiff's libel claim). Here, the affirmative defenses assert that the contractual provisions underlying Guidepoint's claims are unenforceable; the counterclaims seek declaratory judgments concerning the enforceability, scope, and effect of those same provisions. Because the counterclaims simply repackage issues already squarely presented by the affirmative defenses and Guidepoint's affirmative claims, they serve no useful purpose and should be dismissed.

### B. The DJA Counterclaims Would Not Present A Live Controversy Once The Court Resolves Guidepoint's Claims

The Court should also dismiss the DJA counterclaims because they would not present a live controversy once Guidepoint's contract claims are resolved. Contrary to Counterclaimants' contention, adjudicating Counts III through IX of Guidepoint's Third Amended Complaint will necessarily require the Court to determine the contractual rights and obligations implicated by the counterclaims, including whether the contractual provisions at issue areenforceable and whether they impose the obligations Guidepoint alleges. Resolving those claims will therefore resolve the questions on which Counterclaimants seek declaratory relief. Dismissal is proper for that reason. *See, e.g.*, *Aquavit Pharms., Inc.*, 2020 WL 4504737, at *3 (dismissing DJA counterclaim in part because "any resolution of the merits of Plaintiff's claim will necessarily resolve Defendants' counterclaim"); *Su v. Sotheby's, Inc.*, No. 17-4577, 2022 WL 14118016, at *4 n.20 (S.D.N.Y. Oct. 24, 2022), *aff'd sub nom. Su v. Hwang*, No. 24-0653, 2025 WL 1983182 (2d Cir. July 17, 2025) (Caproni, J.) (dismissing DJA cross-claim regarding co-ownership of a vessel because, for the cross-claim plaintiff to prevail on a conversion claim, the cross-claim plaintiff must prove he co-owns the vessel, and once the court adjudicated the conversion claim, "there will no longer be a live controversy with respect to the declaratory judgment").

Indeed, the Preliminary Injunction proceedings confirm that no separate counterclaim is necessary for the Court to adjudicate Counterclaimants' challenges to the Employment Agreements. The Court considered arguments concerning both the enforceability and application of those Agreements in determining Guidepoint's likelihood of success on its affirmative contract claims. Dkt. 190 at 11–14. It rejected those arguments and granted relief without any need for a freestanding declaratory claim. *Id.* The same will be true at final judgment: adjudicating

Guidepoint's contract claims will necessarily determine the contractual questions that Counterclaimants ask the Court to decide by declaration.

Counterclaimants' own description of the controversy underscores the duplication: they allege the parties "will continue to litigate their claims without knowing the conduct which is permissible[.]" Dkt. 219 ¶ 384. That is precisely what Guidepoint's contract claims require the Court to decide. In fact, Counterclaimants have it backwards: resolving Guidepoint's breach of contract claims will determine the contracts' enforceability and whether the challenged conduct violates those contracts.

### C. The DJA Counterclaims Do Not Broaden The Dispute's Scope

The five counterclaims add nothing to the litigation and serve only to needlessly complicate the parties' dispute. Courts regularly dismiss declaratory judgment counterclaims when they raise the same factual and legal issues as the underlying claims. *See Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 287–89 (E.D.N.Y. 2022) (dismissing declaratory judgment counterclaim when the legal and factual issues raised are indistinguishable from the complaint); *see Steris Corp., et al., v. Haller, et al.*, No. 25-2778, 2026 WL 1842931, at *7 (N.D. Ohio June 26, 2026) (dismissing declaratory judgment counterclaim when claim presents no issues not already before the court); *Dixie Gas & Food, Inc. v. Shell Oil Co.*, No. 03-8210, 2005 WL 1273273, at *7 (N.D. Ill. May 25, 2005) (explaining that dismissing a declaratory judgment claim promotes efficiency when the claim "essentially duplicates plaintiffs' other counts"). Allowing the counterclaims to proceed would contravene the DJA's purpose, which is to provide useful relief while promoting judicial efficiency and economy. *See Admiral Ins. Co.*, 57 F.4th at 99–100.

As Counterclaimants concede, the declaratory judgments sought concern the existing parties' respective rights and obligations under already-disputed provisions. *See* Dkt. 219 ¶ 337

("Counterclaim Plaintiffs seek a declaratory judgment of the parties' respective rights and obligations under the Employment Agreements, and a declaratory judgment of the parties' respective rights and obligations under the Equity Agreements."); *id.* ¶ 385 (referring to "declaration of the parties' respective rights, duties, and obligations under the agreements at issue in this action," agreements already subject to Guidepoint's claims).

In substance, the counterclaims are defenses to Guidepoint's breach of contract claims, not independent claims warranting separate adjudication. Count I illustrates this point. Counterclaimants acknowledge that Guidepoint seeks to hold Ware liable for breaching his Employment Agreement, dispute the obligations Guidepoint alleges arise from that Agreement, and ask the Court to resolve Guidepoint's allegedly incorrect interpretation. *See* Dkt. 219 ¶¶ 387–391. That is the inverse of Guidepoint's contract claim. Counterclaimants have not raised a new case or controversy; they merely ask the Court to sanction their position that Guidepoint's breach of contract claims fail.

Counterclaimants' arguments about those Agreements also overlap with arguments the Court already considered while adjudicating Guidepoint's claims. The Court addressed whether the non-solicitation and non-interference provisions were impermissibly broad, whether the conduct shown by Guidepoint constituted solicitation or interference prohibited by the Agreements, and whether the competing activity at issue fell within the Agreements' non-competition provisions. Dkt. 190 at 11–14. The declaratory counterclaims seek a separate adjudication of substantially the same contractual questions.

The Court should not permit Counterclaimants to needlessly complicate the lawsuit by maintaining DJA counterclaims that undermine—rather than promote—the DJA's purpose. *See United Coal Co., LLC v. Xcoal Energy & Res.*, No. 23-5709, 2024 WL 4533349, at *5 (S.D.N.Y.

Oct. 21, 2024) ("The Court does not see any reason—and [counterclaim-plaintiff] provides none—to allow the duplicative arguments.").

**D. Courts Routinely Dismiss DJA Counterclaims In Similar Circumstances**

Courts—including this Court—have dismissed DJA counterclaims in similar circumstances. *Grey Wall Software, LLC v. AeroSimple LLC* is factually analogous. There, an employee was subject to confidentiality, non-competition, and non-solicitation terms, and his former employer sued him and a new venture for breach of contract, trade secret, and additional claims after they started a competing venture. *Grey Wall Software, LLC v. AeroSimple LLC*, No. 22-203, 2022 WL 17404462, at *1–3 (D. Conn. Dec. 2, 2022); *Grey Wall Software, LLC*, 2023 WL 5802621, at *1. The employee asserted a counterclaim seeking a declaratory judgment that the contractual provisions were unenforceable for public policy reasons, which the employer successfully moved to dismiss. *Id*. at *2. First, the court concluded that the counterclaim seeking declaratory relief mirrored the defendant's thirteenth affirmative defense, which asserted that the agreements between plaintiff and defendant are barred because the provisions "are unenforceable for public policy reasons." *Id.* at *2; *see* Answer and Affirmative Defenses, 22-cv-203, ECF No. 62 (D. Conn. Jan. 30, 2023). Second, in dismissing the counterclaim, the court held that the counterclaim "ultimately raises the very same issues of contract interpretation and enforceability that are already at issue in the initial complaint." *Grey Wall Software, LLC*, 2023 WL 5802621, at *5.

Similarly, in *Steris Corp. v. Haller*, a medical equipment company sued a former employee and a company he worked for, alleging violations of his employment and non-competition agreement, among other claims. 2026 WL 1842931, at *2. The defendants pled a counterclaim that "a real and justiciable controversy exists concerning the validity, enforceability and breach of the

restrictive covenants in the Employment Agreement," which the district court dismissed. *Id*. at *2, *6. The court held the counterclaim was redundant of plaintiff's affirmative claims and defendants' affirmative defenses and was "no more than the inverse" of the breach of contract claims. *Id*. at *6. "Defendants will have a full opportunity to litigate their defenses that the contracts' restrictive covenants are invalid, unreasonable and unenforceable while litigating Plaintiffs' affirmative claims," the court concluded. *Id*. at *7.

As in *Grey Wall Software* and *Steris Corp.*, the Court's determination of Guidepoint's underlying breach of contract claims will "necessarily settle the issues for which the declaratory judgment is sought" regarding the enforceability of the contractual provisions. *See Grey Wall Software*, 2023 WL 5802621, at *4. Guidepoint has placed those issues directly before the Court through Counts III through IX of the Third Amended Complaint. Counterclaimants have likewise preserved their challenges to those provisions through their affirmative defenses. The separate declaratory judgment counterclaims therefore serve no useful purpose, and the Court should dismiss them.

This Court has dismissed DJA counterclaims in similar circumstances for similar reasons. In *National Academy of Television Arts and Sciences, Inc.*, the plaintiff sued for copyright infringement; trademark dilution and infringement; and libel per se. 551 F. Supp. 3d at 419. The defendant and counterclaim-plaintiff "believe[ed] the best defense is a poorly thought out offense," and counterclaimed for declaratory judgment that the graphic at issue was fair use and that his statements were not defamatory. *Id*. at 417, 429. This Court considered the counterclaims improper because they were "entirely duplicative" of an affirmative defense and because the declaratory judgment seeking a determination that the statements were not defamatory mirrored the primary libel claim. *Id*. at 430. The Court also dismissed both counterclaims as improper. *Id*. This Court

dismissed DJA counterclaims in an earlier case. In *Aquavit Pharms., Inc.*, a trademark infringement and breach of contract case, the defendants counterclaimed, asking the Court to issue a declaratory judgment finding "the agreement underlying Plaintiff's breach of contract claim . . . unenforceable . . . ." 2020 WL 4504737, at *1. The counterclaims sought a declaratory judgment that the contract underlying the breach of contract disputes was "unenforceable on the grounds of lack of mutual consideration, unconscionability, fraudulent inducement, and unilateral mistake." *Id.* at *2. But each of the four legal arguments mirrored the affirmative defenses, rendering the declaratory action "entirely duplicative of Plaintiff's breach of contract claim." *Id.* at *3. This Court dismissed the counterclaim, finding it "redundant and nothing more than a distraction . . . ." *Id.* So too here.

### E. The Counterclaims Should Also Be Stricken Under Rule 12(f) as Mirror Images of Guidepoint's Contract Claims

Fed. R. Civ. P. 12(f) provides another avenue for dismissal of the Counterclaims because they are mirror images of Guidepoint's affirmative breach of contract claims. Fed. R. Civ. P. 12(f) ("court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). "The procedural vehicle for dismissal of 'mirror image' counterclaims is a motion to strike pursuant to Fed. R. Civ. P. 12(f), which provides that '[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Art Media, LLC v. Brant*, No. 19-CV-11218, 2021 WL 746261, at *3 n.5 (S.D.N.Y. 2021). "A counterclaim is the 'mirror image' of a claim if a case or controversy would not still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim." *Id.* (citation modified). Put differently, when a counterclaim seeks no independent relief beyond negating the plaintiff's claims, Rule 12(f) authorizes courts to strike it. *See, e.g.*, *Bodum Holding AG*, 2020 WL 6135714, at *10–11 (dismissing counterclaim for

declaratory judgment because the defendant's "counterclaim for declaratory judgment [was] a mirror image of [the plaintiff's] claim for declaratory judgment" and therefore, "the counterclaim [did] not serve an independent purpose").

In *Art Media, LLC v. Brant*, for example, the court struck the defendant's counterclaims as "mirror images" of the plaintiff's affirmative claims. *Id.* at *3. The court explained "[i]f judgment was entered against [the plaintiff] on its claims, no case or controversy would remain." *Id.* Specifically, the counterclaim at issue sought "no affirmative relief of [its] own" and instead "ask[ed] for dismissal of [the plaintiff's] claims [and] denial of [the plaintiff's] requests for relief." *Id.* The court concluded that the counterclaim "identifie[d] no particular relief to which [defendant] would be entitled." *Id.*

Such is the case here. The five counterclaims seek a declaratory judgment that the same contracts underlying Guidepoint's breach of contract claims are not enforceable. Indeed, the counterclaims "do[] no more than assert allegations as to why [Counterclaimants] should not be held liable." *Id.* They are exactly the mirror image of the relief Guidepoint seeks. Guidepoint's claims are proceeding toward a merits resolution, not a voluntary dismissal that would leave the contractual questions undecided. And therefore, no independent controversy would survive entry of judgment on those claims. Dismissal also costs Counterclaimants nothing, because they remain free to press every one of their enforceability challenges as defenses to Guidepoint's claims (and as previously discussed, they already have). Rule 12(f) provides an additional, independent procedural vehicle—separate from the discretionary DJA dismissal analysis—for eliminating the counterclaims that serve no purpose before this Court. Therefore, this Court should strike all five counterclaims as mirror images of Guidepoint's affirmative claims.

## CONCLUSION

The counterclaims serve no useful purpose. They duplicate affirmative defenses already before the Court and seek declarations concerning contractual rights and obligations the Court necessarily will address in adjudicating Guidepoint's affirmative contract claims. For these reasons, the Court should dismiss all five counterclaims.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Jacob R. Dean*

Jason D. Burns
Daniel Filor
Shira M. Poliak
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9294
Jason.Burns@gtlaw.com
filord@gtlaw.com
Shira.Poliak@gtlaw.com

Justin K. Victor (phv)
Jacob R. Dean (phv)
Rushton D. Pope (phv)
Fallon Jones (phv)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
(678) 553-2100
victorj@gtlaw.com
deanj@gtlaw.com
Rushton.Pope@gtlaw.com
Fallon.Jones@gtlaw.com

*Counsel for Plaintiff Guidepoint Global, LLC*

**CERTIFICATION OF COMPLIANCE WITH THE WORD LIMIT**

Pursuant to Local Civil Rule 7.1, Plaintiff Guidepoint Global, LLC states that its Memorandum of Law In Support of Motion to Dismiss Defendants DL Software, Inc., Eng, Gohil, and Ware's Counterclaims, filed on November 20, 2026, complies with the 8,750-word limit. The memorandum of law is 4,398 words.

*/s/ Jacob R. Dean*
Jacob R. Dean